IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLIE MEYER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-CV-2329-N |
| | § | |
| UNITED-BILT HOMES, LLC, | § | |
| | § | |
| Defendant. | § | |

# **ORDER**

This Order addresses Defendant United-Bilt Homes, LLC's ("UBH") motion for summary judgment [17].[1] The Court grants the motion.

### I. THE PARTIES' DISPUTE OVER UBH'S ALLEGED
### DISCRIMINATION AND MEYER'S TERMINATION

This is an employment discrimination lawsuit. UBH builds custom homes. Plaintiff Charlie Meyer was the sales manager in UBH's Austin, Texas office from 2009 to 2011.

---

[1] UBH has also filed separate objections to Meyer's response [20]. Under the 2010 amendments to Federal Rule of Civil Procedure 56, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2). As the Advisory Committee noted, "There is no need to make a separate motion to strike. If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial." *Id.*, advisory committee's note to 2010 amendments. If a party wishes to object to the opposing party's summary judgment evidence, it should do so in its summary judgment briefing. Accordingly, the Court overrules UBH's separate objections. *Accord Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515 (5th Cir. 2012) (per curiam); *Danze & Davis Architects, Inc. v. Legend Classic Homes, Ltd.*, Civ. A. No. H-10-0216, 2011 WL 2940671, at *4 n.18 (S.D. Tex. July 19, 2011). To the extent UBH asserts these objections in its reply brief, the Court overrules them as moot because the Court does not base its holding on Meyer's evidence.

ORDER – PAGE 1

Meyer had two direct supervisors during his time at UBH: Chris Turturro, who supervised him from his hiring until the end of February 2010, and Jack Krueger, who supervised him for the rest of his time at the company. Two of Meyer's subordinates, Jeannie McCallum and Pam Tonn, are also important players in this case.

### A. Meyer's Temper Problems and Other Work-Related Issues Under Turturro

Meyer's tenure at UBH was marked by conflict. According to McCallum, Meyer often lost his temper and would "fly off the handle." Aff. of Jeannie McCallum ¶¶ 3, 6, Def.'s App. Supp. Mot. Summ. J. [hereinafter "Def.'s App."] 194–95. The record contains several instances of this type of behavior. Though the parties disagree about the details of some of the instances, the undisputed facts are revealing.

First, during a routine meeting in June 2009, Meyer and Turturro disagreed about a certain home sale. Turturro and McCallum, who was also present, testified that Meyer yelled, cursed, belittled the staff of another office, and threatened Turturro. Aff. of Chris Turturro ¶ 6; McCallum Aff. ¶ 5, Def.'s App. 195. Meyer disputed this characterization in his deposition, stating instead only that he raised his voice during the disagreement. Dep. of Charlie Meyer, 28:17–19, Pl.'s App. Supp. Resp. Mot. Summ. J. [hereinafter Pl.'s App.] 8. Turturro summarized his version of the events in an email to UBH human resources director Jerry Brill that became part of Meyer's personnel file. Def.'s Aff. 71–72.

Second, McCallum called Turturro in August 2009 and complained about Meyer. McCallum Aff. ¶ 8, Def.'s App. 195. Turturro sent an email to UBH senior vice president Donnie Pitts about this call and other complaints about Meyer. Def.'s App. 73. Days later,

ORDER – PAGE 2

Brill, Pitts, and Turturro spoke with Meyer about his temper. Turturro Aff. ¶ 10, Def.'s App. 179; Aff. of Jerry Brill ¶ 8, Def.'s App. 204. Turturro memorialized that counseling session in an email to Brill. Def.'s App. 73.

Third, Turturro testifies that he met with Meyer later in August 2009, at which point he discussed several problems Meyer had been having, including his temper. According to Turturro, he "attempted to make it clear to . . . Meyer that his continued employment with UBH depended upon immediate improvement." Meyer Aff. ¶ 11, Def.'s App. 179. Turturro summarized that meeting in an email to Pitts. Def.'s App. 74.

Fourth, Turturro spoke with Meyer in October 2009 over the phone and issued him a "written counseling." Turturro Aff. ¶ 16, Def.'s App. 180; Def.'s App. 80–81. At this time, Turturro again discussed Meyer's temper with him. *Id.* Meyer admits that he received the written counseling but disputes the validity of the concerns Turturro discussed with him. Meyer Dep. 48:4–49:20, Pl.'s App. 13; Def.'s App. 116–17.

Fifth, Turturro and UBH regional construction manager Terry Stogner report that in December 2009, Tonn complained to them that Meyer had shouted at both Tonn and a UBH contractor. Turturro Aff. ¶ 20, Def.'s App. 181; Aff. of Terry Stogner ¶ 189, Def.'s App. 189. Brill investigated this report, but the investigation did not show that Meyer violated company policy on this occasion. Brill Aff. ¶¶ 13–14; Def.'s App. 205.

Turturro ceased to be Meyer's supervisor at the end of February 2010. Turturro was not involved with Meyer after that time and had no role in Meyer's termination. Turturro Aff. ¶ 21, Def.'s App. 181.

### B. *Meyer's Continued Problems Under Krueger*

Meyer's temper-related problems and other issues surfaced while he worked under Krueger, too. In March 2010, for instance, Meyer shouted and swore at UBH employee Danny Alvarez. Aff. of Daniel N. Alvarez ¶ 6, Def.'s App. 191. Offended, Alvarez reported this incident to Krueger. *Id.*; Aff. of Jack Krueger ¶ 6, Def.'s App. 165–66. In August 2010, Meyer "screamed at" and "threatened" UBH employee Bruce Copeland over the phone, "using a lot of profanity." Aff. of Bruce Copeland ¶ 6, Def.'s App. 186. Copeland, too, reported the conversation to Krueger. Krueger Aff. ¶ 14, Def.'s App. 167.

UBH and Meyer disagree about two other incidents that happened while Meyer reported to Krueger. First, they disagree about whether Krueger purchased new tires for his truck with UBH funds and then, for some amount of time, improperly removed those tires. *Compare* Krueger Aff. ¶ 9, Def.'s App. 166 *with* Meyer Dep. 80:4–81:12, Pl.'s App. 21. Second, they dispute whether Meyer was responsible for promising to give away several hundred dollars worth of plumbing fixtures without authorization. *Compare* Krueger Aff. ¶ 11, Def.'s App. 166–67 *with* Meyer Dep. 70:3–72:9, Pl.'s App. 19. In any event, neither party disputes that these disagreements existed or that Krueger ultimately brought them to the attention of UBH executives.

### C. *Meyer's Termination and This Lawsuit*

Shortly after the last time Krueger received a report that Meyer had shouted and sworn at a UBH employee, Krueger recommended that Meyer be terminated. In an email to Brill and Pitts, Krueger listed six reasons for this recommendation: (1) the dispute about the tires

for Meyer's truck, (2) Meyer's alleged refusal to tell the truth about that dispute, (3) the disagreement about the free fixtures, (4) Meyer's behavior toward Copeland, (5) Meyer's behavior toward Alvarez, and (6) Tonn's and McCallum's fear of Meyer and frustration that the situation had not improved. Krueger ¶¶ 17–19, Def.'s App. 168; Def.'s App. 97. Brill and UBH executive vice-president Craig Young approved the decision to dismiss Meyer, which was effective September 1, 2010. Def.'s App. 96.

Meyer filed a charge of discrimination with the Texas Commission on Human Rights ("TCHR") and the Equal Employment Opportunity Commission ("EEOC") a few days later, on September 7. He thereafter filed this suit in Texas state court. Reading Meyer's state court petition liberally, he asserts four claims under state and federal law. First, he maintains that UBH discriminated against him because of his age. Though he has no direct evidence as to this claim, he points to two bases for his belief that age discrimination played a role in his dismissal. The first is a conference call on July 23, 2009, Meyer's birthday, in which Turturro asked call participants to guess Meyer's age. According to Meyer, Turturro guessed that Meyer was eighty years old. Meyer Dep. 103:20–104:1, Pl.'s App. 27.[2] The second is Meyer's testimony that, after the conference call, other UBH employees made jokes and comments about his age. Meyer Dep. 108:20–109:20, Pl.'s App. 28. According to Meyer, these jokes and comments continued for about five months, until the end of 2009. Meyer Dep. 127:20–24, Pl.'s App. 33.

---

[2]UBH does not concede that Turturro made this statement. *See* Def.'s Mot. Summ. J. 5 n.3.

Meyer's second claim against UBH is that it allowed a work environment hostile to Meyer to exist. As proof, he points to the same two bases for his age discrimination claim.

Third, Meyer contends that UBH discriminated against him because of a disability, diabetes. Specifically, he believes that UBH fired him instead of paying for supposedly foreseeable future medical procedures related to his diabetes.

Fourth, and finally, Meyer asserts that UBH retaliated against him for his support of a different, previously terminated employee who was allegedly fired because of her age.

Meyer's federal age-related claims are pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and his federal disability claim falls under the Americans with Disabilities Act, 42 U.S.C. § 12112, *et seq.* His state claims are pursuant to the Texas Commission on Human Rights Act ("TCHRA"), TEX. LABOR CODE § 21.001, *et seq*. UBH removed the case to this court and now seeks summary judgment as to all of Meyer's claims.

## II. STANDARD OF REVIEW FOR MOTIONS FOR SUMMARY JUDGMENT

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of

the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. UBH IS ENTITLED TO SUMMARY JUDGMENT ON ALL OF MEYER'S CLAIMS

Meyer has not come forward with summary judgment evidence sufficient to create a fact dispute about any of his claims under state or federal law. As a general matter, the Court reviews Meyer's state claims and his parallel federal claims under the same standards. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 650 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 136 (2012) (citing *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 991–92 (5th Cir. 2005); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n.2 (5th Cir. 1999)). The Court accordingly addresses his analogous state and federal claims together except where the relevant standards differ.

#### A. There Is No Factual Dispute as to Meyer's Age Discrimination Claim

***1. Standard of Review for Age Discrimination Claims.*** – Meyer's first claim is that his termination was illegal age discrimination. The ADEA states, in relevant part, that an employer may not "discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). The burden-shifting framework from *McDonnell Douglas Corp. v. Green* governs ADEA claims. 411 U.S. 792, 802–04 (1973); *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010). Under this framework, a plaintiff with only circumstantial evidence that his or her termination violated the ADEA must first prove a prima facie case of age discrimination, showing that he was (1) discharged; (2) qualified for the position; (3) within the protected age group at the time of the discharge, i.e., over age forty; and (4) either (i) replaced by someone younger, (ii) replaced by someone outside the

protected class, or (iii) otherwise discharged because of his or her age. *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 455 (5th Cir. 2011) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004)); *Munday v. H.B. Zachry Co.*, 127 F.3d 33 (5th Cir. 1997).[3]

If the plaintiff makes a prima facie case, that gives rise to an inference of discrimination. The burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its decision. *See Machinchick v. PB Power, Inc.*, 398 F.3d 345, 352 (5th Cir. 2005). The burden of persuasion, however, always rests with the plaintiff. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43 (2000). If a defendant carries this burden, it destroys the presumption of discrimination created by the plaintiff's prima facie case, and the plaintiff must then meet his or her ultimate burden of persuasion on the issue of intentional discrimination. This requires either producing evidence of actual discriminatory intent or introducing evidence tending to show that the reason offered by the defendant is a pretext for discrimination. *Machinchick*, 398 F.3d at 350 (citing *Reeves*, 530 U.S. at 148)).[4] If the defendant offers more than one legitimate nondiscriminatory reason, "the employee must provide some evidence, direct or circumstantial, to rebut each of the employer's proffered reasons." *Scott v. Univ. of Miss.*, 148 F.3d 493, 504 (5th Cir. 1998) (citing *Swanson v. General Servs. Admin.*, 110 F.3d 1180,

---

[3] The parties do not dispute that Meyer's evidence is circumstantial rather than direct.

[4] As Meyer has no such evidence of actual discriminatory intent, the only relevant inquiry at this stage of the analysis is whether he can show pretext.

1185 (5th Cir. 1997); *EEOC v. Tex. Instruments Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996)), *abrogated on other grounds by Kimel v. Fla. Bd. of Regents*, 528 U.S. 62 (2000) .

***2. Meyer Has Not Come Forth With Evidence Creating a Dispute as to Pretext.*** – The parties do not dispute that Meyer has proved his prima facie case: he was 56 when he was fired, was qualified, and was replaced by a younger employee. UBH, in turn, has come forth with several legitimate, nondiscriminatory reasons for Meyer's discharge. Specifically, it points to the six reasons Krueger enumerated when he recommended Meyer's discharge: (1) the dispute about the tires for Meyer's truck, (2) Meyer's alleged refusal to tell the truth about that dispute, (3) the disagreement about the free fixtures, (4) Meyer's behavior toward Copeland, (5) Meyer's behavior toward Alvarez, and (6) Tonn's and McCallum's fear of Meyer and frustration that the situation had not improved. Krueger Aff. ¶¶ 17–19, Def.'s App. 168; Def.'s App. 97. The burden accordingly shifts to Meyer to show that these reasons are pretextual.

Meyer advances four arguments purporting to show that UBH's proffered rationales to be pretextual, but these arguments are insufficient. First, Meyer claims that his good sales numbers show that UBH's asserted rationales are pretext. *See* Pl.'s App. 152. None of UBH's proffered rationales, however, relates to Meyer's sales performance, so this argument is irrelevant.

Second, he claims that Tonn and McCallum underperformed and that their complaints about him were in retaliation for his attempts to improve their performance. Meyer's attempt to challenge Tonn's and McCallum's motivation for and the validity of their reports,

ORDER – PAGE 10

however, does not prove that *UBH's* reliance on those reports in its decision to terminate Meyer was a pretext for age discrimination. *See, e.g.*, *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1165 (5th Cir. 1993) ("[T]he validity of the initial complaint is not the central issue, because the ultimate falseness of the complaint proves nothing as to the employer . . . . The real issue is whether the employer reasonably believed the employee's allegation and acted on it in good faith."); *Jones v. Flagship Int'l*, 793 F.2d 714, 729 (5th Cir. 1986) ("Flagship need not have been correct in its basis for suspending and discharging Jones to show that its actions were motivated for non-retaliatory reasons."); *Dickerson v. Metro. Dade Cnty.*, 659 F.2d 574, 581 (5th Cir. Unit B Oct.1981) (concluding that employer's reasonable belief that employee violated absentee policy was not pretextual even if that belief was wrong). Meyer's does not show that UBH's reliance on Tonn's and McCallum's reports was not reasonable or in good faith.

Meyer's third and fourth attempts to prove pretext founder for the same reason his second attempt does. His third argument is that he acted properly with respect to the issue of the tires for his truck, and his fourth is that his actions with respect to the plumbing fixture giveaway were likewise proper. Again, the correctness of UBH's belief is not at issue. The only issue is whether UBH's decision to act on those beliefs was reasonable and in good faith, and Meyer's evidence does not raise a factual dispute on this point.

Finally, the Court notes that Meyer is silent as to two of UBH's asserted nondiscriminatory rationales: (1) Meyer's behavior towards Copeland and (2) his behavior towards Alvarez. Accordingly, even if Meyer had raised fact issues as to pretext on his other

points, his attempt to show pretext would still fail. *See Scott*, 148 F.3d at 504 (requiring employee to present evidence as to each asserted rationale to show pretext).

The Court concludes, in sum, that Meyer has proved a prima facie case of age discrimination, that UBH has asserted six legitimate, nondiscriminatory reasons for firing Meyer, and that Meyer has not demonstrated that these reasons are pretextual. UBH is thus entitled to summary judgment on Meyer's age discrimination claim.

***3. Meyer Does Not Succeed on His TCHRA Claim Under a Mixed-Motive Analysis.*** – Meyer contends that the evidence he has provided is sufficient for his TCHRA claim to survive summary judgment under Texas's "mixed-motive" test.[5] Under the TCHRA, a plaintiff need only prove that age discrimination was "a motivating factor" in the defendant's adverse employment action. *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001). "In a mixed-motive case, which involves direct evidence of discrimination, once the plaintiff proves the improper discrimination, the employer may avoid liability by 'proving that it would have made the same decision even if it had not allowed [the improper motive] to [play] such a role.'" *Reber v. Bell Helicopter Textron, Inc.*, 248 S.W.3d 853, 857 (Tex. App. – Fort Worth 2008, pet. denied) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244–45 (1989)) (first alteration in original).

---

[5]The ADEA does not authorize a mixed-motive age discrimination claim. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009).

Meyer's claim fails under this analysis for two reasons. First, Meyer's evidence is insufficient to prove improper discrimination.[6] Meyer alleges that Turturro and other Austin employees made discriminatory comments; however, these individuals had no part in the decision to fire Meyer. Krueger, Brill, and Young made that decision. Moreover, the sort of comments Meyer alleges do not amount to evidence of discriminatory animus. *See Hernandez*, 350 S.W.3d at 284 (finding no mixed motive claim where only evidence of discriminatory animus was boss's calling plaintiff "old man" and "old fart"). Second, even if Meyer's evidence were sufficient to show that age discrimination played a role in his dismissal, UBH's asserted reasons for its decision, two of which are uncontradicted, demonstrate that it would have made the same decision regardless of whether age discrimination played such a role. UBH is thus entitled to summary judgment on Meyer's Texas law claim for age discrimination, even under a mixed-motive analysis.

---

[6]Under Title VII, direct evidence of discrimination or retaliation is not necessary in a mixed-motive case. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98–99 (2003) (retaliation claim); *Smith v. Xerox Corp.*, 602 F.3d 320, 332 (5th Cir. 2010) (discrimination claim). Texas courts, however, continue to require direct evidence in mixed-motive cases under the TCHRA. *E.g.*, *Hernandez v. Grey Wolf Drilling, L.P.*, 350 S.W.3d 281, 284 (Tex. App. – San Antonio 2011, no pet.) ("Whether a case will be classified as a pretext case or a mixed-motive case 'depends entirely' on whether the plaintiff has direct evidence that discriminatory motives influenced the employer's decision to terminate the plaintiff." (citing *Quantum Chem.*, 47 S.W.3d at 476)); *Reber*, 248 S.W.3d at 857 (same requirement). Regardless of whether direct evidence is necessary, however, the Court would reach the same conclusion.

### B. Meyer's Hostile Work Environment Claim Fails

Meyer next asserts that Turturro's and the other Austin employees' comments about his age created a hostile work environment. Here, the state and federal versions of this claim fail for different reasons.

*1. Meyer's TCHRA Claim Is Barred.* – A plaintiff has 300 days to file an EEOC charge under the ADEA when the plaintiff lives in a state whose laws also bar the complained-of activity. 29 U.S.C. § 626(d)(1)(B); *Clark v. Resistoflex Co., a Div. of Unidynamics Corp.*, 854 F.2d 762, 765 (5th Cir. 1988). The TCHRA, however, allows a plaintiff only 180 days to file an age-discrimination charge with the TCHR. TEX. LABOR CODE § 21.202(a). Meyer filed his charge with state and federal authorities on September 7, 2010. The limitations period under the ADEA thus automatically allows Meyer to bring a claim for activity occurring after November 11, 2009. The state limitations period, however, reaches back only to March 12, 2010. Both state and federal law, however, recognize a "continuing violation" exception to their respective limitations periods. The Court concludes that Meyer's ADEA claim falls under this exception but that his TCHRA claim is time-barred.

The Fifth Circuit's continuing violation exception "accommodate[s] plaintiffs who can show that there has been a pattern or policy of discrimination continuing from outside the limitations period into the statutory limitations period, so that all discriminatory acts committed as part of this pattern or policy can be considered timely." *Celestine v. Petroleos*

*de Venezuela, S.A.*, 266 F.3d 343, 351–52 (5th Cir. 2001) (quoting *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999)). The exception requires more than a series of discrete discriminatory acts. *Id.* at 352. The plaintiff, rather, must show "an organized scheme leading to and including a present violation, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action." *Id.* (citing *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998)). Because the federal limitations period of 300 days covers all events after November 11, 2009, the Court concludes that the continuing violation exception applies to Meyer's hostile work environment claim under the ADEA. He asserted that the hostile environment lasted from July 2009 until the end of that calendar year. Meyer's evidence sufficiently demonstrates an organized scheme of allegedly discriminatory behavior that continued from outside the limitations period into that period. The Court accordingly considers this claim on its merits below.

Texas's continuing violation exception functions similarly to the Fifth Circuit's exception. *See Santi v. Univ. of Tex. Health Sci. Ctr. at Hous.*, 312 S.W.3d 800, 804 (Tex. App. – Houston [1st Dist.] 2009, no pet.). Because the limitations period in this case allows the Court to look back only to March 12, 2010, and because Meyer admits that the comments giving rise to the allegedly hostile work environment ceased by the end of 2009,[7] the

---

[7]As explained below, a sworn admission like this one trumps later testimony by Meyer to the contrary, absent an explanation for the inconsistency. *See infra* section III.D.

ORDER – PAGE 15

continuing violation exception does not apply to Meyer's state claim.[8] Thus, the Court thus finds that the Meyer's state hostile work environment claim is time-barred.

**2. *Meyer's ADEA Claim Fails*.** – A plaintiff seeking to prove a hostile work environment claim under the ADEA must show that (1) the plaintiff was over the age of 40; (2) the plaintiff was subjected to harassment, either through words or actions, based on age; (3) the nature of the harassment was such that it created an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer. *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011) (citing *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834–35 (6th Cir. 1996)).

In this case, Meyer has not pointed to summary judgment evidence showing that alleged harassment was such that it created an objectively intimidating, hostile, or offensive work environment as required by the third *Dediol* element. In evaluating this element, a court examines the totality of the circumstances to determine whether conduct is objectively offensive, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance. *Id.* (citing *EEOC v. WC&M*

---

[8] Meyer's termination on September 1, 2010 constitutes a separate, discrete act of discrimination and is not part of his hostile work environment claim. *See Davis v. Autonation USA Corp.*, 226 S.W.3d 487, 493 (Tex. App. – Houston [1st Dist.] 2006, no pet.) ("Under the continuing violation theory, a plaintiff must show an organized scheme leading to and including a present violation, so that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action." (citing *Cooper-Day v. RME Petroleum Co.*, 121 S.W.3d 78, 87 (Tex. App. – Fort Worth 2003, pet. denied))).

*Enters.*, 496 F.3d 393, 399 (5th Cir. 2007)). "A workplace environment is hostile when it is 'permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently pervasive to alter the conditions of the victim's employment.'" *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 443 (5th Cir. 2012) (citing *Dediol*, 655 F.3d at 441).

Here, the conduct appears to have been reasonably frequent: it occurred a about twice or three times a week. Meyer Dep. 128:24–129:3, Pl.'s App. 33. Nether Turturro's joke nor the ensuing comments, however, were severe. According to Meyer, the comments consisted of employees saying, for instance, that Meyer was eighty-five years old and that he couldn't "make it out of [his] truck." Meyer Dep. 128:8–15, Pl.'s App. 33. They never involved profanity.[9] Meyer Dep. 128:18–23, Pl.'s App. 33. Moreover, the comments were not physically threatening or intimidating. And Meyer himself testified that they "[d]idn't affect my work performance." Meyer Dep. 131:16–21, Pl.'s App. 34. Based on the totality of the circumstances and the summary judgment record, the Court concludes that the UBH Austin office's work environment was not objectively intimidating, hostile, or offensive, at least with respect to Meyer's age. *Cf. Reed*, 701 F.3d at 443 (finding no ADEA claim for hostile work environment where other employees called plaintiff names like "old man," "old fart," "pops," and "grandpa."). Thus, Meyer's claim does not survive summary judgment.[10] UBH

---

[9]Meyer has testified that Tonn referred to Meyer as "the rat bastard." Meyer Dep. 126:9–11, Pl.'s App. 33. Meyer could not, however, articulate how this term specifically related to Meyer's age. Meyer Dep. 129:25–130:24, Pl.'s App. 33–34. The Court finds that there was no such relationship.

[10]For the reasons set out in this section, UBH would be entitled to summary judgment as to Meyer's state hostile work environment claim if that claim were not time-barred.

is consequently entitled to summary judgment on Meyer's state and federal hostile work environment claims.

### C. Meyer Has Abandoned His Claim for Disability Discrimination

In his complaint, Meyer asserts that UBH discriminated against him because of a disability, diabetes. UBH moved for summary judgment on this claim, and Meyer declined to address UBH's arguments in his response. The Court accordingly deems Meyer to have waived this claim. *See Hinojosa v. Tarrant Cnty., Tex.*, No. 4:08-CV-315-A, 2009 WL 1309218, at *10 (N.D. Tex. May 5, 2009) (deeming claim waived under similar circumstances), *aff'd sub nom. Cook v. Tarrant Cnty., Tex.*, 372 F. App'x 493 (5th Cir. 2010) (unpub.). Moreover, even if he had not waived it, the Court would conclude that this claim fails for the same reason his ADEA discrimination claim fails: because Meyer has not come forward with evidence raising a fact issue regarding pretext.[11] The Court accordingly determines that UBH is entitled to summary judgment as to Meyer's disability discrimination claim.

### D. Meyer's Deposition Undermines His Retaliation Claim

Finally, Meyer asserts a claim for retaliation. The *McDonnell Douglas* framework governs retaliation claims. A plaintiff establishes a prima facie retaliation case by showing that (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) there was a causal link between the protected activity and the adverse employment action.

---

[11]Meyer's claim fares no better under a mixed motive analysis, for the reasons set out above. *See supra* section III.A.3.

*Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 523 (5th Cir. 2008).  If the plaintiff is successful in presenting a prima facie case, the burden shifts to the employer to articulate a legitimate, nonretaliatory reason for the adverse employment action.  *Long v. Eastfield Coll.*, 88 F.3d 300, 304-05 (5th Cir. 1996) (citing *McMillan v. Rust Coll., Inc.*, 710 F.2d 1112, 1116 (5th Cir. 1983)).  If the defendant proffers such a reason, "the fact-finder must decide whether retaliation was the but-for cause for the employer's action."  *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 136 (2012) (quoting *Long*, 88 F.3d at 305 n.4).  This means that "a plaintiff may avoid summary judgment on 'but for' causation by demonstrating 'a conflict in substantial evidence on this ultimate issue.'"  *Id.* at 660 (citing *Long*, 88 F.3d at 308).

In an affidavit, Meyer claims he was fired for complaining that the termination of another UBH employee, Patricia Kennedy, was due to age discrimination.  Aff. of Charlie Meyer ¶ 11, Pl.'s App. 110.  Previously, however, Meyer admitted in his sworn deposition that does not think he was terminated as a result of disagreeing with UBH's decision regarding Kennedy.  Rather, he stated that "I think I was terminated for age discrimination and disability" discrimination.  Meyer Dep. 166:23–167:1.  This admission negates the causation element and dooms Meyer's claim.  Meyer cannot use his later, contradictory affidavit to manufacture a factual dispute absent explanation for the contradiction.  *See S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) ("It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony.").  Thus, assuming without deciding

ORDER – PAGE 19

that Meyer's comments about Kennedy's termination constituted protected activity, the Court concludes that Meyer has failed to show that this activity was causally related to Meyer's termination. Meyer therefore has not established a prima facie case. Moreover, his retaliation claim would fail under the third step of the burden-shifting framework, because he has not pointed to evidence sufficient to raise a fact issue about whether Meyer's allegedly protected activity was a but-for cause of his dismissal.[12] UBH is thus entitled to summary judgment on this claim.

## CONCLUSION

For the reasons set forth above, the Court grants UBH's motion for summary judgment.

Signed March 14, 2013.

_____
David C. Godbey
United States District Judge

---

[12] Again, for the reasons set out above, Meyer's claim would also fail were the Court to treat it as a mixed-motive claim. *See supra* section III.A.3.